Kevin MUNSON, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,**

Hardy & Son Trucking Co.,
et al., Intervenors.

No. 97–AA–778.

District of Columbia Court of Appeals.

Argued Oct. 28, 1998.

Decided Dec. 24, 1998.

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

Amy L. Epstein, for intervenors.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before STEADMAN and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

"The definition of the term 'employee' ... has probably produced more reported cases than any definition of status in the modern history of law." 3 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 43.10, at 8–1 (1998). Petitioner Kevin Munson challenges a compensation order of a hearing examiner denying his claim for workers' compensation benefits on the ground that Munson was not an "employee" of Hardy & Son Trucking Co. ("Hardy"). We vacate the order and remand the case to the Director of the District of Columbia Department of Employment Services ("DOES") to clarify the agency's view of the legal standard for determining whether an individual is an "employee" within the meaning of the District of Columbia Work-

ers' Compensation Act of 1979, D.C.Code § 36–301 *et seq.* (1997), and for further proceedings in this case consistent with that standard.

## I.

In June 1994, Munson began hauling sludge for Hardy, a District of Columbia business that was under subcontract to haul sludge from the Blue Plains Waste Treatment Plant in the District to various landfills in Maryland and Virginia. Munson entered into a written agreement to lease Hardy his truck and trailer; the lease stated the "operation does include driver." Munson received no payments for the lease; rather, Hardy gave him work in exchange for the lease. Munson did the same type of work for Hardy that Hardy does in general: hauling sludge. The president of Hardy testified that Munson was not precluded from hauling for other contractors.

Each day, Munson would call early in the morning to supervisors of Hardy or the general contractor at the Blue Plains facility to find out whether there was work for him on that particular day. If so, Munson would be instructed what to pick up when at the Blue Plains facility, where to take the material, and which roads to take en route to comply with regulations regarding maximum weights for trucks crossing bridges. Munson set his own schedule regarding when to take breaks. Munson was paid by the ton hauled, with the rate varying depending on distance he had to travel. Munson's work schedule varied depending on whether Hardy had work for him to do, some weeks working only two to three days and other weeks as many as six days. As was the case for Hardy's hourly employees as well, Munson was not paid for days that he did not work. Hardy deducted no

Social Security or other taxes from Munson's paycheck, and Munson received a 1099 tax form. Munson insured his truck and paid for fuel, repairs, and other equipment expenses. He took out his own workers' compensation insurance policy, dated April 4, 1995, which was good only in Maryland, apparently as a requirement for continuing to work for Hardy. Between June 1994 and the time of his accident, Munson worked only for Hardy.

About two or three weeks before Munson's accident, Hardy's staff ordered Munson to park his own trailer at the dispatch site and to use a Hardy trailer with his truck. On November 13, 1995, after dumping at a site in Virginia, Munson had returned to the Blue Plains facility in the District. Munson was standing up on the back of the truck trailer attempting to open one of the doors with a rope when the rope broke and he fell to the ground 10 feet below. Munson sustained multiple injuries, which rendered him unable to work for several months.

Petitioner claims that he suffered a work-related injury while working as an "employee" for Hardy in the District of Columbia, and that he is entitled to benefits under the District of Columbia Workers' Compensation Act ("WCA"), D.C.Code § 36–301 *et seq.* On February 19, 1997, a hearing examiner issued a compensation order denying Munson's claims on the ground that Munson was not an "employee" within the meaning of the WCA.[1] *See Munson v. Hardy & Son Trucking Co.,* H & AS No. 96–176, OWC No. 298005 (Feb. 19, 1997). On March 11, 1997, Munson filed a timely petition for review with the Office of the Director of DOES. The compensation order became final for purposes of judicial review when the Director failed to rule on Munson's internal appeal within forty-five days. *See* D.C.Code § 36–322(b)(2) (1997).[2] On May 12, 1997, Munson

---

**1.** The hearing examiner alternatively ruled that the District of Columbia Office of Workers' Compensation was without jurisdiction over the claim because the accident did not occur in the District. On appeal, all parties agree that this assertion has no support in the record; indeed, the only evidence is to the contrary. *See Wallace v. District Unemployment Compensation Bd.,* 294 A.2d 177, 179–80 (D.C.1972) (uncontradicted testimony constitutes substantial evidence to support a finding). Because Munson was injured in the District, the District's Office of Workers'

Compensation has jurisdiction over this claim. *See* D.C.Code § 36–303(a)(1) (1997) (workers' compensation law applies to injury of employee that occurs in the District if employee was performing work for employer in the District at time of injury).

**2.** The WCA provides in pertinent part that where an applicant has sought review by the Director, "[f]inal decisions issued pursuant to such review shall be rendered within 45 days from the date of the application .... If a final decision is not

timely appealed to this court. *See Stone v. District of Columbia Dep't of Employment Servs.*, 707 A.2d 789 (D.C.1998) (appeal must be filed within thirty days of the expiration of the forty-five day statutory period); D.C.Code § 36–322(b)(3) (1997); D.C.App. R. 15(a).[3]

## II.

The central issue on appeal is whether the hearing examiner correctly applied the law in determining that Munson was not an "employee," within the meaning of the workers' compensation statute, of Hardy & Son Trucking on the date of his injury. The Act itself simply defines the term "employee" as encompassing "every person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied, in the District of Columbia." D.C.Code § 36–301(9) (1997).[4] Therefore, resort must be made to other sources for assistance in more fully defining and applying the term.

Two distinct court-developed tests exist in this country to determine whether an individual is a covered employee under a workers' compensation statute. *See* LARSON, *supra*, § 43.53. The traditional "right to control" test had its genesis in tort law standards for employers' vicarious liability for acts of employees. *See id.* §§ 43.10, 43.40. This test examines whether the putative employer has a right to control the details of the claimant's work. *See id.* §§ 44.30–44.35. More recently, some courts have turned instead to the so-called "relative nature of the work" test. Under the "relative nature of the work" test, an employment relationship, rather than an independent contractor relationship, is found "when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service." *Id.* § 45.00.

Professor Larson's treatise devotes more than two hundred pages to a discussion of these tests and the extensive case law on the subject, including numerous cases involving the question of whether owner-operator truck drivers are covered employees under workers' compensation statutes. *See id.* §§ 43.00–45.32. While determination of "employee" status is a very fact-specific analysis, it is clear that the outcome of such a determination in certain cases may hinge on whether the decision-maker applies the "right to control" or the "relative nature of the work" test.

Notwithstanding Professor Larson's assertion (quoted at the beginning of this opinion) as to the frequency in litigation of disputes over the definition of "employee," this court has, so far as we know, never had occasion to address that issue in the context of workers' compensation law.[5] In this case, the hearing examiner took the position that the "right to control" and "relative nature of the work" tests are interdependent and should be considered in *pari materia*. *See Munson v. Hardy & Son Trucking Co.*, *supra*, at 3 (citing LARSON, *supra*, § 45.10, at 8–195 (1996)). This hybrid legal test, however, appears to have been based in the main on her reading of LARSON, which is a misinterpreta-

---

rendered within such 45–day period the compensation order shall be considered a final decision for the purposes of appeal [to the District of Columbia Court of Appeals]." D.C.Code § 36–322(b)(2).

3. In *Stone*, we also observed: "Counsel have represented that it is the practice of the Director in some cases to continue to consider a petition for review of a Compensation Order even after the expiration of the statutory forty-five day period. Nothing in this opinion is intended to affect the right of any party to seek judicial review of an order of the Director issued after such expiration." 707 A.2d at 791 n. 2.

4. The provision contains certain exceptions, not relevant here.

5. In *Henderson v. Charles E. Smith Management, Inc.*, 567 A.2d 59 (D.C.1989), we were called upon to determine the scope of the word "agent" in D.C.Code § 36–304(b), providing immunity against suit for "agents" of an employer where workers' compensation coverage is provided. While we analyzed that issue under the equivalent of a "right to control" test, we recognized the existence of the alternative "relative nature of the work" test and concluded the result would have been the same under either standard. *See* 567 A.2d at 65 n. 12.

tion of the treatise.[6] As it played out in her analysis, the hybrid test had strong elements of the "right to control" test and indeed she cited LARSON § 44.23, a section regarding the right to control test, to support the ultimate determination that Munson was not an "employee" of Hardy.

A survey of other hearing examiners' decisions indicates similar uncertainty as to the appropriate standard to apply to make such determinations. In *Mitchell v. Hubert L. Hamilton,* Dir. Dkt. No. 87-4, H & AS No. 86-362, OWC No. 0069308 (Feb. 16, 1988), the Director of DOES affirmed a compensation order in which the hearing examiner had concluded that the claimant was an employee under both the "right to control" and the "relative nature of the work" tests, stating that the "Director approves of the use of [both] these tests as an aid in determining whether a particular claimant is an employee covered by the Act or an independent contractor." The *Mitchell* decision did not clearly specify what standard applies; that is, whether both tests must be satisfied or whether the use of either test alone is acceptable. Some hearing examiners have applied both tests, without expressly indicating whether both tests must be satisfied in order to find an employment relationship. *See, e.g., Winfield v. The Support Center,* H & AS No. 91-467, OWC No. 17801 (Aug. 6, 1993) (finding an employment relationship under both the right to control and the relative nature of the work tests); *Galmore v. D.C. Ctr. for Independent Living,* H & AS No. 90-249, OWC No. 0163439 (Oct. 18, 1990) (finding claimant to be an independent contractor under both tests); *De La Maya v. Capitol Hill Servs., Inc.,* H & AS No. 87-137, OWC No. 0109444 (Dec. 17, 1987) (finding claimant to be an employee under both tests). Other hearing examiners have determined that the "relative nature of the work" test is the appropriate standard. *See Culley v. Falcon Express Couriers, Inc.,* H & AS 91-353, OWC No. 0177851 (July 19, 1991) (citing the

decision in *Mitchell* as indicating that the Director has adopted both tests, but giving weight to the "relative nature of the work" test in determining that claimant was an employee); *Silver v. Robert Hawk,* H & AS No. 93-425, OWC No. 245428 (May 1, 1996).

Petitioner contends that the Director of the Department of Employment Services authoritatively adopted the "relative nature of the work" test as the standard in *Valenti v. Falcon Express Couriers, Inc.,* Dir. Dkt. No. 91-47, H & AS No. 90-678, OWC No. 0182761 (Aug. 16, 1995). However, the Director in *Valenti* did not specifically state that the "relative nature of the work" test was the preferred standard; rather, the Director simply affirmed the decision of the hearing examiner, who had found the claimant to be an employee under the "relative nature of the work" test. If the Director was intending to establish a definitive agency position that the "relative nature of the work" test was the only test to apply to determine the existence of an employment relationship under the WCA, we would have expected a discussion of both the "right to control" and the "relative nature of the work" tests, followed by a clear specification of the standard to be applied henceforth by the agency, as well as reasons for this choice.

■ It is axiomatic in our jurisprudence that we "accord considerable weight to an agency's construction of a statute which the agency administers." *Washington Post v. District of Columbia Dep't of Employment Servs.,* 675 A.2d 37, 40 (D.C.1996) (citations omitted). We can fully do so, however, only in the context of agency determinations that reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations, each of which has substantial support. *See Sibley Mem'l Hosp. v. District of Columbia Dep't of Employment Servs.,* 711 A.2d 105, 108 (D.C. 1998) (deference to agency interpretation of

---

**6.** The section that the hearing examiner cited to in LARSON does not state that the right to control and the relative nature of the work tests are interdependent; rather, it discusses only the "relative nature of the work" test and states that there are two sub-tests under this test: (1) whether the work is an integral part of the employer's business, *see* § 45.20, and (2) whether the claimant furnishes an independent business or professional service, *see* § 45.30. It is these two sub-tests of the "relative nature of the work" test which Larson says are interdependent and should both be satisfied in order to find employee status. *See* LARSON, *supra,* § 45.10, at 8-195.

statute "only warranted ... when the record provides some evidence that the Director considered the language, structure, or purpose of the statute when selecting an interpretation") (citing *Mushroom Transp. v. District of Columbia Dep't of Employment Servs.*, 698 A.2d 430, 432–33 (D.C.1997)); *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 899–900 (D.C.1995) ("It would be incongruous to accord substantial weight to an agency's interpretation of a statute where the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure or purpose of the provisions which were ostensibly being construed.").

■ Moreover, it is the agency head who must ultimately speak authoritatively in such legal interpretations binding all components of the agency. "Even though the court has the last word on the law, it is also important that the Director of DOES address this issue in the first instance in light of its importance and the agency Director's responsibility within the agency for interpreting the statute which the agency administers." *Vieira v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 579, 584 (1998) (citing *KOH Sys. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 446, 449 (D.C. 1996)).

Because this case was appealed using the forty-five day bypass rule, see note 2, *supra*, the Director had not addressed the legal issue raised in this case. In a similar case, where we determined that the construction of a statutory provision by a hearing examiner was "inadequate" and the case was appealed under the forty-five day rule, we remanded to the Director of DOES "for an authoritative interpretation of the provision." *See Mushroom Transp., supra*, 698 A.2d at 431. A remand to the Director for such clarification conforms with our practice of remanding open legal issues for "reasoned interpretation by the agency charged with administering the statute." *Wells v. District of Columbia*

*Dep't of Employment Servs.*, 513 A.2d 235, 242 (D.C.1986) (remanding where there was no indication that DOES had thoroughly considered and resolved the question of its authority to backdate unemployment compensation claims of ex-service members under a 1982 act); *see also Sibley Memorial Hosp., supra*, 711 A.2d at 108; *Coumaris, supra*, 660 A.2d at 902 (remanding for "meaningful input" where Board failed to provide a reasoned construction of the statute to support its actions); *Rafferty v. District of Columbia Zoning Comm'n*, 583 A.2d 169, 176 (D.C. 1990) (finding it "inappropriate to decide the issue of first impression urged upon us ... without an expression of the Commission's views on the legal question presented"); *Long v. District of Columbia Dep't of Employment Servs.*, 570 A.2d 301, 302 (D.C. 1990) ("[A]bsent an analysis staking out an agency position to which this court normally would accord some deference, we have no choice but to remand for clarification." (internal quotation and citation omitted)).

Accordingly, we vacate the hearing examiner's compensation order and remand the case to the Director for a definitive interpretation on behalf of the agency of the statutory term "employee" and for further proceedings not inconsistent with this opinion.[7]

*So ordered.*

---

**7.** Counsel asserted at oral argument that the delay in resolving this case has led to significant economic hardship for petitioner. We trust that the Director will give this petition such expedited consideration as is consistent with his policies and equitable with respect to other petitioners seeking the Director's review of their decisions.