Edward C. GROSS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

Killian Cable Contracting Company &
Travelers Insurance, Intervenors.

No. 02–AA–658.

District of Columbia Court of Appeals.

Argued May 7, 2003.
Decided June 19, 2003.

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

Amy L. Epstein, for intervenors.

Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before RUIZ and WASHINGTON, Associate Judges, and KING, Senior Judge.

WASHINGTON, Associate Judge:

Petitioner, Edward C. Gross, seeks review of the decision of the Director of the Department of Employment Services (DOES), arguing that the Director erred in concluding that he was not an employee of Killian Cable Contracting Company (KCC) and thus not entitled to workers' compensation benefits pursuant to D.C.Code § 32–1501 *et seq.* (2001). We remand the case for further consideration, fact-finding and analysis.

## I.

KCC is a cable installation contractor for District Cablevision. As a contractor, KCC is given a certain number of installation jobs. Once those jobs are received by KCC, the installation supervisors, who are also installers, divide those jobs among all the installers who have been approved by and received a technician number from District Cablevision. There are a number of steps required by District Cablevision to become an approved technician and receive a technician number. An applicant must show: 1) proof of workers' compensation and liability insurance coverage; 2) a driver's license; 3) a vehicle registration; 4) passing a drug screening test; and 5) passing a criminal background check. A technician is then able to get the tools and equipment necessary, from District Cablevision, to complete an installation job. While a technician is required to have a valid technician number, "helpers," individ-

uals who assist the technician, are not. On or about July 13, 1998, Gross met with Ronald Baptiste, the owner of KCC to discuss performing cable installation services for KCC. At that time, Gross was informed of the prerequisites which had to be met before he could begin working.

Although District Cablevision stated that it had no record of providing Gross with a technician number,[1] Gross, using technician number 459, which was a KCC number,[2] began performing cable installation services. Gross had approximately thirty-five work orders, which he either filled or attempted to fill[3] and was paid for the work he performed, albeit some time after the accident. On July 20, 1998, Gross suffered an injury to his leg and arm when he fell from a ladder in the course of performing a cable installation. This injury underlies the claim for workers' compensation benefits. Following his injury, Gross filed for workers' compensation benefits. A formal hearing was held on July 14, 1999 before Administrative Law Judge (ALJ) Charles D. Devoe. KCC alleged, and ALJ Devoe concluded, that there was no employer/employee relationship between Gross and KCC. Gross appealed the ruling to the Director, and during the pendency of the appeal, filed a motion to reopen the record to introduce additional evidence on the issue of whether an employer/employee relationship existed. The motion was granted and the case was sent back to ALJ Devoe. A second hearing was held on or about October 24, 2000. Following the second hearing, ALJ Devoe again concluded that there was no employer/employee relationship and thus Gross was not entitled to benefits. The ALJ's decision was affirmed by the Director on May 22, 2002. Gross filed a timely notice of appeal.

## II.

We review the Director's decision to determine whether it is supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morrison v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 223, 224–25 (D.C.1999) (quoting *George Hyman Const. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985)). However, we review questions of law *de novo*, "deferring to the Director's interpretation of the statute it enforces *unless* the interpretation conflicts with the statute, is inconsistent with the [governing] regulation, or otherwise is contrary to established legal doctrine." *Id.* at 225 (internal quotations and citations omitted and emphasis added).[4] "The mere existence of evidence ... contrary [to the ALJ's findings], even if substantial, does not permit this court to substitute its judgment for that of the agency." *Children's Defense Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1252 (D.C.1999). Furthermore, "[c]redibility determinations of a[n ALJ] are accorded special deference by this court." *Teal v. District of Columbia Dep't of Employment Servs.*, 580 A.2d 647, 651 n. 7 (D.C.1990).

---

1. Gross disagreed and testified that he received his technician number from District Cablevision.

2. District Cablevision had assigned number 400 through 499 for KCC technicians.

3. Some work orders were not filled, because, for example the residents were not home.

4. "[I]t is the Director's final decision, not the [ALJ]'s, which may be reviewed in this court." *See Capitol Hill Hosp. v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 682, 685 n. 2 (D.C.1999) (internal quotations and citations omitted).

D.C.Code § 32–1501(9) (2001) defines an employee as "every person, including a minor, in the service of another under any contract for hire or apprenticeship, written or implied, in the District of Columbia . . . ." This statute requires us to first determine if there is an express or implied contract for hire, as an essential feature of an employment relationship. As Professor Larson noted, compensation law,

> is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he or she has never consented would not ordinarily harm him or her in a vicarious liability suit by a stranger against his employer, but it might well deprive him or her of valuable rights under the compensation act, notably the right to sue his or her own employer for common-law damages. This reasoning applies not only to the question whether there is any employment relation at all, but also to the question whether one of two or more persons is an employer. In such cases, with all the elements of employment having been established as to

some employer, the issue may be solely whether the particular defendant made a contract with the particular employee.

3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, 1990 § 64.01 (2002). If such a contract is present, we next determine whether that contract creates an employer/employee relationship or whether an independent contractor relationship exists. In determining whether an employer/employee relationship exists, DOES applies a "relative nature of work" test. *Munson v. Hardy & Son Trucking Co., Inc.,* OWC No. 0029805, H & AS No. 96–176, Dir. Dkt. No. 97–23 (April 19, 1999). This test, which we accept for purpose of deciding this case, focuses on whether the claimant is hired to do work in which the company specializes.[5]

The ALJ concluded, and the Director agreed that there was no contract for hire between KCC and Gross; therefore, Gross was not an employee under the Act and thus not eligible for compensation. Because the Director concluded that there was no contract for hire, he did not conduct an analysis under the relative nature of work test. In his analysis, the ALJ focused on whether KCC knew Gross was working for it at the time of his injury. The ALJ found that assuming the presumption of compensability applied;[6] it

---

5. There are two parts to this test. First, one must examine the nature and character of the claimant's work or business. There are three factors to consider under this first prong: 1) the degree of skill involved; 2) the degree to which it is a separate calling or business; and 3) the extent to which it can be expected to carry its own accident burden. The second prong focuses on the relationship of the claimant's work to the purported employer's business and looks at three factors as well: 1) the extent to which claimant's work is a regular part of the employer's regular work; 2) whether claimant's work is continuous or intermittent; and 3) whether the duration is sufficient to amount to the hiring of continuing services, as distinguished from contracting for the completion of a particular job. *See generally* 3 Arthur Larson & Lex K. Larson, Larson Workers' Compensation Law, 1990 § 60.05 (2002).

6. It is curious that the ALJ would apply the presumption of compensability at all. "In order to benefit from the presumption, an employee need only present 'some evidence' of two things: (1) a disability, and (2) 'a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to the . . . disability.' " *Washington Hosp.*

had been rebutted that Gross was not in fact an employee. To support his finding, the ALJ first noted that Gross never satisfied the threshold requirements to become a technician—he did not provide proof of insurance, and no background check or drug screening were completed. Furthermore, the ALJ credited the testimony of one of Gross's alleged supervisors, Michael Tabor, who stated that Gross was not provided any work orders, over that of Gross who testified otherwise. To support this credibility determination the ALJ noted that Gross's tech number did not appear on the work orders as the installer assigned to complete the job. The Director affirmed these credibility findings.

While we will give great deference to the Director's credibility determinations after reviewing the record, we believe that the Director's conclusions rely too heavily on the ALJ's findings, which fail to analyze critical evidence presented on remand and require a strained reading of the other evidence presented to support his conclusion. It appears that although the ALJ examined most of the evidence presented during the first hearing and on remand, his analysis fails to take into account critical evidence that supports the claimant's theory. First, while some of the business record evidence introduced on remand was included in the ALJ's analysis, he failed to include any discussion of the documents in remand exhibit 2. On their face, these documents, entitled "District Cable Vision Limited Partnership Converter Activity Report," appear to indicate that Rafael Rojas, a KCC employee and one of Gross's supervisors, knew Gross was completing work on KCC's behalf before Gross's inju-

ry. The documents appear to show that Gross submitted the reports as proof of work completed, and that Rojas signed off and dated the forms as received. They were dated before the accident and sent to D.C. Cablevision for payment. Thus, if Rojas's initials on the form are deemed accurate, Rojas knew that Gross was working on KCC's behalf, and as a supervisor, as opposed to a technician, Rojas' knowledge could be imputed to KCC. Since Rojas did not testify at the hearing, this documentary evidence is uncontested. Furthermore, Gross testified that he received work orders from both Tabor and Rojas. While Tabor testified that he never gave Gross work orders, Rojas did not testify during either hearing. Thus, Gross's testimony regarding receiving work orders from Rojas was uncontested. The ALJ also failed to reconcile his belief that Gross received the work orders from the technicians actually assigned and not from supervisors Tabor and Rojas, with the uncontested fact that some of the work orders were actually assigned to Tabor and Rojas. Thus, the ALJ's analysis supports that Tabor and Rojas, as agents of KCC, could have been the source of work orders for Gross. Additionally, the ALJ came to his conclusion, in part, upon a finding that Gross failed to complete the prerequisites for becoming a technician—failed to provide evidence of liability insurance, failed to get a criminal background check, and failed to get a drug test. Reliance on at least one of these facts is misplaced. The failure to get a criminal background check cannot be attributed to Gross because it is KCC's responsibility to get the background check. Furthermore,

*Center v. District of Columbia Dept. of Employment Servs.,* 744 A.2d 992, 996–97 (D.C. 2000) (quoting *Ferreira v. District of Columbia Dep't of Employment Servs.,* 531 A.2d 651, 655 (D.C.1987)). When determining whether an injury is work-related, the basic inquiry is

whether the claimant was 1) an employee at the time of the injury and 2) the injury arose out of the employment. Thus, until these basic facts are established, the presumption of compensability does not come into play.

as noted by Gross, the purpose of those prerequisites is to obtain a technician number from D.C. Cablevision. Once he had obtained a technician number, he was able to fulfill work orders assigned to KCC without fulfilling the usual prerequisites.

While we do not, and will not, substitute our judgment for that of the Director, we must conclude that the Director erred in relying on the ALJ's analysis. The failure of the ALJ to address all the evidence and resolve these inherent contradictions indicate that not all the evidence that was presented was considered. For the foregoing reasons, we must remand this case back to DOES for further consideration of the evidence presented and additional fact-finding as it deems appropriate.

*So ordered.*