**Jaime REYES, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.**

No. 10–AA–1244.

District of Columbia Court of Appeals.

Submitted Sept. 13, 2011.

Decided July 12, 2012.

Neil J. Fagan was on the brief for petitioner.

Irvin B. Nathan, Attorney General for the District of Columbia, Michael A. Milwee, Senior Assistant Attorney General, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief for respondent.

Before BLACKBURNE–RIGSBY, Associate Judge, and BELSON and REID,* Senior Judges.

BLACKBURNE–RIGSBY, Associate Judge:

On June 1, 2007, petitioner Jaime Reyes ("Reyes") was injured while pouring concrete at the home of Manuel Gonzalez, the sole proprietor of Manual Gonzalez Home Improvement ("MG Home Improvement" or "Employer") and the brother-in-law of petitioner. After an evidentiary hearing, the Administrative Law Judge ("ALJ") determined that no employer/employee relationship existed between Reyes and MG Home Improvement, and therefore, denied Reyes's claim for benefits without reaching the other issues raised at the hearing. Reyes sought review of the compensation order from the Compensation Review Board ("CRB"), whose members subsequently affirmed the ALJ's ruling that no employer/employee relationship existed, relying on the ALJ's analysis of the "rela-

* Judge Reid was an Associate Judge, Retired, at the time of submission. Judge Reid's status changed to Senior Judge on December 12, 2011.

tive nature of the work" test.[1] We conclude that the CRB erred in affirming the compensation order because some of the ALJ's factual findings were not supported by substantial evidence, and the ALJ's conclusions did not flow rationally from those findings of fact that were supported by the evidence. Instead, we conclude that there was an employee/employer relationship. Therefore, we remand this case to the CRB for further consideration of the evidence and additional fact-finding, if necessary, to address the remaining issues regarding Reyes's workers' compensation claim, namely whether Reyes's injury was causally related to the June 1, 2007 incident, the nature and extent of Reyes's injury, a calculation of Reyes's weekly wage, and whether penalties should be assessed for unreasonable delay.

## I.

## FACTUAL BACKGROUND

Reyes and Gonzalez are brothers-in-law. In 2004, Gonzalez helped Reyes get hired at Alkhan Construction, where Gonzalez supervised Reyes. A few months later, Gonzalez started his own remodeling company, MG Home Improvement, and hired Reyes to work at his new company.[2] On June 1, 2007, the date of the injury giving rise to the workers' compensation claim, Reyes and several other MG Home Improvement workers were performing remodeling work at Gonzalez's home, and were pouring a concrete floor. Reyes tripped on the netting used to secure the concrete and injured his shoulder, rendering him unable to work.

Reyes filed a claim for workers' compensation benefits on July 18, 2007. Both parties conceded that an injury occurred, but disputed whether Reyes was an employee of MG Home Improvement at the time of the injury and also whether the injuries were as extensive as Reyes claimed. After an informal conference, a Claims Examiner determined that Reyes had an employer/employee relationship with MG Home Improvement, and was entitled to workers' compensation benefits. MG Home Improvement challenged the

1. The Director of the Department of Employment Services ("DOES") adopted the two-part "relative nature of the work" test as the appropriate test to use when determining the existence of an employer/employee relationship. *See Munson v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 623, 627 (D.C. 1998) (ordering the Director to provide a definitive interpretation of the term "employee" in light of confusion about which test applies); *Munson v. Hardy & Son Trucking Co., Inc.*, Dir. Dkt. No. 97–23, OWC No. 29805, H & AS No. 96–176 (April 19, 1999) (adopting the "relative nature of the work" test). The "relative nature of the work" test was described in *Gross v. District of Columbia Dep't of Emp't Servs.*, 826 A.2d 393, 396 n. 5 (D.C.2003):
    There are two parts to this test. First, one must examine the nature and character of the claimant's work or business. There are three factors to consider under this first prong: 1) the degree of skill involved; 2) the degree to which it is a separate calling or business; and 3) the extent to which [the

work in question] can be expected to carry its own accident burden. The second prong focuses on the relationship of the claimant's work to the purported employer's business and looks at three factors as well: 1) the extent to which claimant's work is a regular part of the employer's regular work; 2) whether claimant's work is continuous or intermittent; and 3) whether the duration is sufficient to amount to the hiring of continuing services, as distinguished from contracting for the completion of a particular job.

2. Reyes started working for MG Home Improvement in May 2005. The record shows that the only W–2 form Reyes received from Alkhan Construction was for the 2004 tax year. Thus, the record indicates that Reyes was no longer working for Alkhan Construction when he started to work for MG Home Improvement.

claim determination, asserting, among other things, that Reyes was not an employee.

The ALJ conducted an evidentiary hearing on November 19, 2009. Reyes testified that he began working for MG Home Improvement in 2005, when Gonzalez decided to start his own remodeling company. Reyes performed several tasks for MG Home Improvement, including driving a company truck, pouring asphalt, installing plumbing, handling cement construction, and "all kinds of jobs related to remodeling." Reyes was paid weekly by company check, at a rate of $12.50 per hour. Reyes also testified that he performed tasks for Gonzalez, generally on the weekend, for which he was not paid. Such work included driving Gonzalez around, organizing tools in Gonzalez's workshop, cutting grass, directing traffic, and cleaning up after Gonzalez's dog.

Gonzalez's testimony at the hearing largely corroborated Reyes's characterization of their relationship. Gonzalez explained that he started MG Home Improvement as a side business and the company performed "remodeling, painting house[s] sometime[s], anything, any remodeling." Reyes worked for MG Home Improvement from May 2005 until June 1, 2007, the date of the injury. As the sole proprietor of MG Home Improvement, Gonzalez determined Reyes's hours, and paid him weekly at a rate of $12.50 per hour, when work was available, but did not deduct taxes or make any other withholdings. At the time of Reyes's injury, business for MG Home Improvement was slow, so Gonzalez offered Reyes and two other employees work remodeling Gonzalez's home. Each worker, including Reyes, was paid by company check for the hours worked on the date of the injury. After the injury, Reyes continued to work for Gonzalez on three or four other occasions, but Reyes's work responsibilities were limited due to his injury, and the checks Reyes received from MG Home Improvement were mostly to assist with Reyes's medical expenses, and not necessarily in payment for any work he performed.

After considering this testimony and other evidence presented at trial, including testimony by another worker present during Reyes's injury and documentary evidence showing paychecks Reyes received from MG Home Improvement over the course of twenty-six months, the ALJ denied Reyes's request for workers' compensation benefits. Applying the "relative nature of the work" test, the ALJ concluded that Reyes did not have an employer/employee relationship with MG Home Improvement because the work Reyes performed for MG Home Improvement was independent from the operation of MG Home Improvement's business. Relying heavily on Reyes's paychecks, the ALJ determined that Reyes's work was "not continuous or regular," and "not a regular and continuous part of the cost of the product Employer produces."

Reyes appealed the ALJ's determination to the CRB, which affirmed the compensation order in a split decision. The majority decision agreed with the ALJ that Reyes did not have an employer/employee relationship with MG Home Improvement. The majority of CRB members concluded that although the ALJ did not fully address whether Reyes satisfied the first part of the "relative nature of the work" test (the nature and character of the claimant's work), the CRB could affirm on the basis of the ALJ's ruling that Reyes did not satisfy the second part of the test (the relationship of the claimant's work to the purported employer's business). Because Reyes had the burden of satisfying both parts of the test to establish that an employer/employee relationship existed, the

CRB reasoned that Reyes's failure to satisfy the second part of the test was "fatal" to his claim. One concurring CRB member wrote separately to note that he believed Reyes satisfied the first part of the "relative nature of the work" test, but agreed with the majority that Reyes did not satisfy the second part. The third CRB member dissented, and would have held that Reyes satisfied the first and second parts of the test, and therefore was an employee of MG Home Improvement. This petition for review followed.

## II.

## ANALYSIS

### A. Standard of Review

Our review of a final order of the CRB is limited to determining whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Asylum Co. v. District of Columbia Dep't of Emp't Servs.*, 10 A.3d 619, 624 (D.C.2010). Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, "we cannot ignore the compensation order which is the subject of the [CRB's] review." *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C.2007). We will affirm the CRB's decision if "(1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *District of Columbia Dep't of Mental Health v. District of Columbia Dep't of Emp't Servs.*, 15 A.3d 692, 696 (D.C.2011) (quoting *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 915 (D.C. 2009)) (internal quotation mark omitted). "Substantial evidence 'means such relevant evidence as a reasonable mind might ac-

cept as adequate to support a conclusion.' " *Wiley v. District of Columbia Dep't of Emp't Servs.*, 984 A.2d 201, 204 (D.C.2009) (quoting *Children's Defense Fund v. District of Columbia Dep't of Emp't Servs.*, 726 A.2d 1242, 1247 (D.C.1999)). If the factual findings are not supported by substantial evidence, we will not defer to them, but we also may not consider the evidence *de novo* and substitute our view of the facts for that of the ALJ. *See Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 882, 885 (D.C.2003). Instead, we must remand to the agency for further consideration of the evidence and additional factual findings, if necessary. *Gross, supra* note 1, 826 A.2d at 397. Our review of legal conclusions, however, is *de novo*.

The CRB has the statutory responsibility of reviewing compensation orders in the first instance. *See* D.C.Code § 32–1521.01(d) (2004 Supp.); *see also* 7 DCMR § 266.2 (2005). The CRB must affirm a compensation order if the ALJ's factual findings are supported by substantial evidence and the ALJ's legal conclusions flow rationally from those facts. *See* D.C.Code § 32–1521.01(d)(2)(A); *see also* 7 DCMR § 266.2. The issue on appeal is whether the CRB erred in affirming the compensation order denying Reyes's workers' compensation benefits.

### B. Legal Framework

The CRB affirmed the ALJ's determination that Reyes did not have an employer/employee relationship with MG Home Improvement by applying the "relative nature of the work" test, which requires a very fact-specific analysis. *Munson, supra* note 1, 721 A.2d at 624. The first part of the test considers the nature of the claimant's work, while the second part considers relationship between the claimant's work and the employer's work. *Gross, supra* note 1, 826 A.2d at 396 n. 5; 3

ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 60.05[2] at 60–11 (2011). The purpose of this test is to determine whether an employer/employee or independent contractor relationship exists, and the test focuses on whether the worker is hired to do work in which the company specializes. *Gross, supra* note 1, 826 A.2d at 396. Although both parts of the test must be analyzed before an employer/employee relationship is established, the first part is accorded less weight, because "[t]he nature of the claimant's work, in the abstract, is seldom a safe guide in itself, and for this reason it is dangerous to rely on precedents classified solely by the character of the worker's job[.]" 3 LARSON, *supra*, § 60.05[2] at 60–10. The emphasis, then, should be on the second part of the test, which examines the relationship of the claimant's work to the purported employer's business. Although several factors are considered under this part of the "relative nature of the work" test, no one factor is dispositive. "If the worker does not hold himself out to the public as performing an independent business service, and regularly devotes all or most of his or her independent time to the particular employer, the relationship is probably that of an employee, *regardless of other factors.*" 3 LARSON, *supra*, § 62.06[1][a] at 62–20 (emphasis added). Moreover, a claimant who worked "on call for one or two companies" may have an employer/employee relationship, even though that worker "worked independently at odd intervals as needed." 3 LARSON, *supra*, § 62.06[1][a] (citation omitted).

The ALJ determined that Reyes satisfied neither part of the "relative nature of the work" test, and the CRB affirmed this determination, stating that "the ALJ properly applied the applicable law, and there is substantial evidence in the record to support the conclusion that there is no employer/employee relationship between the parties." Contrary to the CRB's findings and conclusions, our review shows that the compensation order lacked both substantial evidence supporting its factual findings and reasoned conclusions drawn from those findings. Instead, based on our review of the record, we conclude that the evidence in the record clearly and convincingly supports (not negates) that an employee/employer relationship existed between Reyes and MG Home Improvement.

## C. The CRB erred in concluding the findings were supported by substantial evidence.

██ The CRB determined the ALJ's factual findings were supported by substantial evidence, which means "more than a mere scintilla" of evidence. *District of Columbia Dep't of Emp't Servs. v. Vilche,* 934 A.2d 356, 360 (D.C.2007). However, our review of the record exposes two factual findings unsupported by substantial evidence. First, the ALJ found that "[t]here is no way to discern from the record evidence, the number of hours Claimant worked to earn each payment." While this may be true for checks Reyes received after the injury (because these checks included amounts Gonzalez gave or loaned to Reyes, due to their family relationship), prior to that, Gonzalez was clear that he paid Reyes at a rate of $12.50 per hour. When asked "if [Reyes] worked 10 hours you'd pay him $125?", Gonzalez responded, "Exactly. I pay him every time. Never owe him." Gonzalez stated that he paid Reyes "every week when he worked for me" and that he "always paid [Reyes] his hour[s] that he worked." Furthermore, our review of the twenty-eight pre-injury cancelled checks in the record reveals that most of the checks represent payments at $12.50 an hour, paid in quarter-hour incre-

ments.[3] Thus, the record substantially supports Reyes and Gonzalez's testimony that Gonzalez paid Reyes $12.50 an hour, and contradicts the ALJ's determination, affirmed by the CRB, that there is *no way* to determine the hours Reyes worked.

■ Second, the ALJ found that Reyes's work was separate and independent from the work of MG Home Improvement because MG Home Improvement performed tasks related to painting and drywall, but, according to the ALJ, Reyes did not say that he performed this type of work.[4] The record evidence contradicts the ALJ's finding that MG Home Improvement performed *only* painting and drywall work. Gonzalez testified that his business performed "remodeling, painting house[s] sometime, anything, any remodeling," as well as "painting, drywall, stuff like that." Moreover, Reyes testified that he performed generally "any type of work" and "all kinds of jobs related to remodeling," including construction work, driving a truck to dump materials, laying asphalt and cement, remodeling homes, installing plumbing, and cement construction. The ALJ recited only a limited account of Gonzalez's testimony—painting and drywall—and did not include Gonzalez's full testimony that MG Home Improvement performed "any remodeling." Thus, the CRB erred in concluding that the ALJ's determination that Reyes's work was separate and independent from the work performed

by MG Home Improvement was substantially supported by evidence.

■ The CRB acknowledged that the ALJ's factual finding regarding the nature of MG Home Improvement's work was unsupported by the evidence, explaining that "the evidence in the record may allow for the conclusion that classifying [MG Home Improvement's] construction business as focused on painting and drywall is a restrictive analysis of the facts[.]" Yet, the CRB affirmed the ALJ's determination, contrary to its mandate to affirm only compensation orders that are based on substantial evidence. *See* D.C.Code § 32–1521.01(d)(2)(A); 7 DCMR § 266.2. The CRB reasoned that the ALJ's "restrictive analysis" of the evidence was harmless because Reyes could not establish "that the time he worked compares with work available during that period."

The legal conclusion by the CRB that the ALJ's "restrictive analysis" of the facts is harmless is erroneous for several reasons. First, because the focus of the "relative nature of the work" test is "on whether the claimant is hired to do work in which the company specializes," *see Gross, supra* note 1, 826 A.2d at 396, the ALJ's mischaracterization of MG Home Improvement as a company that specialized in painting and drywall, and of Reyes as someone who "directed traffic, 'drove around' with Employer, and worked at

---

3. For example, we note that on May 19, 2007, Gonzalez paid Reyes $444, which represents 35.5 hours of work, at $12.50 an hour, rounded to the nearest whole dollar amount (33.5 × 12.50 = 443.75). Similarly, on June 9, 2006, Gonzalez paid Reyes $384, which represents 30.75 hours of work at $12.50 an hour, rounded to the nearest whole dollar amount (30.75 × 12.50 = 384.375). Gonzalez also paid Reyes $400, on June 2, 2006, $200 on March 2, 2006, and $150 on October 7, 2005, which represent exactly 32, 16 and 12 hours of work, respectively.

4. Specifically, the ALJ made the following findings:

Employer testified he had a side business that performed painting and drywall work. The general character of the work Claimant performed for Employer is independent from the operation of Employer's business. In all of the work duties that Claimant testified he performed for Employer, at no time did Claimant describe painting or drywall to be a part of his duties.

Employer's home picking up dog feces[,]" completely skews the analysis. Such a mischaracterization is not harmless. Second, nowhere in the "relative nature of the work" test does it state that the claimant's work must compare to the work *available* during that period, as the CRB seems to state. Instead, the test focuses on whether the nature or character of the claimant's work is *related* to the employer's business. The Workers' Compensation Act does not limit workers' compensation benefits to individuals who work all available hours, but rather covers "every person, including a minor, in the service of another *under any contract of hire* or apprenticeship, written or implied, in the District of Columbia," with limited exceptions. D.C.Code § 32–1501(9) (2001) (emphasis added). Finally, even under the CRB's misstatement of the "relative nature of the work" test, we do not agree that Reyes failed to present *any* evidence that "the time he worked compares with the work available during that period," because it is not supported by the record. Another MG Home Improvement employee testified that "whenever Mr. Gonzalez need[ed] some help with some odd job or [to] do work with him, he [would] call any of us to go help." The employee also explained that "sometimes there was work available, sometimes there wasn't" and said that "[i]f Mr. Gonzalez had some work available, then he would call us and we would go. But if he didn't have anything, then he just wouldn't call us. So during that time, there was a lot less work available." The worker's testimony was not contradicted by any other evidence in the record. The record shows that when Gonzalez had work available, Reyes worked. Thus, the evidence contradicts the CRB's conclusion that Reyes presented *no* evidence comparing the time he worked with the work MG Home Improvement had available.

Accordingly, the compensation order should not have been affirmed by the CRB because two of the factual findings made by the ALJ are not supported by the evidence, and the unsupported factual findings were not harmless to the overall determination that Reyes should be denied workers' compensation benefits. *See* 7 DCMR § 266.2(a) (explaining that the Board may only affirm a compensation order "that is based upon substantial evidence and is in accordance with the governing Act and other applicable laws and regulations"); *see also Shaw v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 936 A.2d 800, 808–09 (D.C.2007) (reversing and remanding to agency for a redetermination of annuity benefits where factual findings were not supported by substantial evidence and the error was not harmless).

**D. The CRB erred in concluding the ALJ's legal conclusions flowed rationally from the facts.**

The CRB also erred in affirming the ALJ's legal conclusions because three of the ALJ's conclusions did not flow rationally from the facts. The ALJ concluded: (1) Reyes was not an employee because he had no specialized skill; (2) twenty-six months is an insufficient duration of time to support an employment relationship; and (3) the paychecks Reyes received indicated his employment was intermittent and therefore not a regular part of MG Home Improvement's business. The ALJ's first erroneous conclusion was based on her factual findings regarding the degree of skill of Reyes's work. The ALJ noted that "[c]laimant has no specialized independent skill or professional service that he is providing" and that his work was "general," meaning unskilled, but erroneously concluded from this that Reyes was not an employee, when in fact, such findings indicate that

Reyes was *more* likely to be an employee. The less skilled and less independent the work is, the more likely the worker is an employee and not expected to carry his own accident burden. This is so because skilled or licensed workers who set their own hours and terms can choose what risks they are willing to take on, and are more likely to be independent contractors; while less skilled workers, who are dependent upon someone else for their hours, duties, and tasks, do not have a say in the risks they will take, and so should be protected by the workers' compensation scheme. *See generally* 3 LARSON, *supra*, § 60.02 at 60–04 (comparing a seamstress working in a factory (employee) to a tailor who owns her own shop (not an employee)); *see also McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1196–97 (D.C.2008) (en banc) (discussing humanitarian purpose of the workers' compensation scheme, which is to "provide financial and medical benefits to employees injured in work-related accidents").

The ALJ also found that Reyes worked for MG Home Improvement over a period of twenty-six months, but concluded from this finding that the duration of Reyes's employment was "insufficient" to show that Reyes's work was a part of the regular work of MG Home Improvement. Duration of employment is one of the factors that should be considered when determining whether the work performed relates to the regular operation of the employer's business, which addresses the second part of the "relative nature of the work" test. *See Gross, supra* note 1, 826 A.2d at 396 n. 5. The length of employment is indicative of whether the worker's employment is long-term and therefore a part of the regular work of the employer, or merely casual and therefore not necessary to the overall productivity of the employer.[5] "Ordinarily, very short employments, of a few hours or days, are considered casual, while duration for several weeks or months is usually in itself enough to remove a job from [the casual] category." 4 LARSON, *supra*, § 73.02 at 73–3; *see also Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 209 (D.N.J.1999) (declining to find employer/employee relationship because, *inter alia*, worker's involvement with employer lasted for a total of four days).

Reyes began working for MG Home Improvement shortly after Gonzalez formed the company, and worked for MG Home Improvement for over two years. The twenty-six-month period of Reyes's employment spanned nearly the entirety of MG Home Improvement's existence, and pushes the nature of Reyes's relationship with MG Home Improvement beyond "casual" to reflect more of an employer/employee relationship. The twenty-six-month duration of employment also indicates that MG Home Improvement did not view Reyes as a one-time independent contractor and suggests that Reyes was not hired to complete a specific task or a particular

---

5. Whether the employment is casual is also significant because workers who engage in casual employment are not "employees" under the workers' compensation statute. D.C.Code § 32–1503(a–2) (2001); D.C.Code § 32–1501(9)(E). We note that although the familial relationship between Reyes and Gonzalez may suggest that Reyes's employment was "casual" and thereby not within the ambit of the workers' compensation statute, we conclude that Reyes's employment was not casual. Where an employee establishes that the nature of his work was a regular part of his employer's work, which is accomplished by satisfying the second part of the "relative nature of the work" test, the employee has also established that his employment is not casual. As discussed at length above, Reyes's work was within the usual business of MG Home Improvement, thus we conclude that his employment is not casual.

job, but rather that MG Home Improvement provided continuous work to Reyes. Reyes had worked the entire month of May 2007, just prior to his accident on June 1, 2007. Thus, the twenty-six-month duration of Reyes's work for MG Home Improvement was sufficient to support a conclusion that Reyes was a regular part of MG Home Improvement's work and the ALJ gave no explanation as to why twenty-six months was an insufficient duration of time.[6] We need not defer to the ALJ's conclusion that the duration of Reyes's work is "not sufficient," where the ALJ provides little "meaningful analysis or articulation of the legal principles on which [her] statement [is] rested[.]" *Georgetown Univ., supra,* 971 A.2d at 919 (declining to defer to the ALJ's decision); *see also (Carolyn) Jones v. District of Columbia Dep't of Emp't Servs.,* 41 A.3d 1219, 1226 (D.C.2012) (remanding where the ALJ's conclusions were made "in conclusory terms, with apparent contradiction" and the ALJ's determinations could not be ascertained because they were a "complete mystery"). The CRB erred in determining that the ALJ rationally concluded from the facts of the case that the duration of Reyes's work was insufficient to establish an employer/employee relationship.

Finally, the ALJ's conclusion that Reyes's work was intermittent does not flow rationally from the factual findings. We defer to the ALJ's substantially supported factual finding that in a twenty-six-month period (104 weeks), Reyes received thirty-two week's worth of checks, and that for two of the twenty-six months, including the month immediately preceding the incident, Reyes "performed a full month's work for Employer." The ALJ and CRB concluded from this evidence that Reyes's work was intermittent, and thus the evidence was insufficient to satisfy the second part of the test. Even if, as the ALJ concluded, Reyes's work was intermittent, this does not preclude the existence of an employer/employee relationship. *See* 3 LARSON, *supra,* § 62.06[1][a] (noting that a claimant may meet the "relative nature of the work" test, even if he "worked independently at odd intervals as needed").[7] It is just one factor that must be weighed. Other jurisdictions have considered the intermittent nature of the work as a minor consideration in determining whether an employer/employee relationship exists. For example, a New Jersey appellate court felt "compelled" to find that the "relative nature of the work" test was satisfied, where: (1) the claimant accepted the work because his own business was slow; (2) the employer hired the claimant at the rate of $120 per day; (3) he worked for the employer only three to four times during the month of the accident; and (4) the claimant, a sheetrock installer, was performing an integral part of the employer's sheetrocking business. *Kertesz v. Korsh,* 296 N.J.Super. 146, 686 A.2d 368, 373 (Ct.App.Div.1996). Although

---

6. We note that DOES's decisions have found significantly shorter durations of employment sufficient to support a conclusion that an individual's work is a regular part of an employer's business. *See, e.g., (William) Jones v. Barnes,* OWC No. 567206, OHA No. 03–096, 2003 WL 22174449 (June 23, 2003) (intermittent work over course of seven months); *Terrell v. Revolutionary Inventions,* AHD No. 10–432, 2010 WL 5591240 (Dec. 22, 2010) (continuous assignments for the four weeks prior to the accident).

7. Other non-binding DOES decisions have found an employer/employee relationship despite the fact that the work is intermittent. *See, e.g., (William) Jones, supra* note 6, OWC No. 567206, OHA No. 03–096 (finding employer/employee relationship; "[e]ven though claimant was hired intermittently for the completion of particular jobs, it was so done several times over a seven month period.").

such precedents are merely persuasive rather than binding, the same conclusion is compelled by the facts of our case. *See (Carolyn) Jones, supra,* 41 A.3d 1219, 1226 (reversing CRB's order affirming ALJ's determination where ALJ's conclusions did not flow rationally from the facts and where the ALJ did not take into account "the entirety of the record").

### III.

### CONCLUSION

The CRB erred in affirming the ALJ's compensation order. The ALJ's analysis of the "relative nature of the work test" was flawed because some factual findings were not supported by substantial evidence, and other factual findings that did have evidentiary support were used to draw legal conclusions that did not flow rationally from those facts. For these reasons and because the ALJ did not address the remaining issues left for determination (*i.e.,* whether Reyes's injury was causally related to the June 1, 2007 incident, the nature and extent of Reyes's injury, a calculation of Reyes's weekly wage, and whether penalties should be assessed for unreasonable delay), we vacate the decision of the CRB and remand for further proceedings not inconsistent with this decision.

*So ordered.*