*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

07/13/2017

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

No. 16-AA-751

CLARK CONSTRUCTION GROUP, LLC, *et al.*, PETITIONERS,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DARRELL BANKS, INTERVENOR.

Petition for Review of an Order of the
Compensation Review Board of the District of Columbia
Department of Employment Services
(CRB-11-16)

(Submitted May 10, 2017                                    Decided July 13, 2017)

*Sarah M. Burton* was on the brief for petitioners.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, filed a statement in lieu of brief in support of respondent.

*David J. Kapson* was on the brief for intervenor.

Before THOMPSON and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

Opinion for the court by *Senior Judge* REID.

Opinion by *Associate Judge* MCLEESE, concurring in part and dissenting in

part, at page 14.


REID, *Senior Judge*: Petitioners, Clark Construction Group, LLC, and Zurich North America ("Clark Construction"), seek review of the Decision and Order of the Compensation Review Board ("CRB") affirming the Administrative Law Judge's ("ALJ") Compensation Order on Remand; the order concerned the claim of Intervenor, Darrell Banks, who suffered an injury at work on March 7, 2013. Clark Construction, Mr. Banks' employer at the time of his injury, contests the CRB's determination that: 1) Mr. Banks' medical conditions, namely his lumbar spine (lower back) and cervical spine (neck) complaints, are causally related to the work accident, and 2) Mr. Banks is entitled to temporary total disability benefits from February 14, 2014, onward. For the reasons stated below, we affirm the decision of the CRB.


## FACTUAL SUMMARY


A formal hearing regarding Mr. Banks' claim for workers' compensation benefits was held on January 15, 2015, before an ALJ. The ALJ issued a Compensation Order, dated March 31, 2015, following the hearing. These documents show the following. Mr. Banks worked for Clark Construction as a pile

driver for approximately seven years. As a pile driver, Mr. Banks' expertise was "highly specialized" and his "usual work duties required walking, lifting and heavy labor." On March 7, 2013, he sustained an injury after slipping on wet clay and striking a "boulder-like dirt hump." He testified that he had a chainsaw in his hands, his "head snapped back and [he was] trying to hold the chainsaw so that it [did]n't cut [him]." His "feet went out from under" him. He hit the hump below his neck, in between his shoulder blades, and also hit his back "[r]ight above [his] belt." He was treated at Clark Construction's clinics in March and April 2013. His neck and upper back were hurting at the time but he did not mention his neck because the pain in that area was not as severe as his lower back pain, and he was "trying to go back to work." He was treated by Dr. Joshua Anderson in December 2013; Dr. Anderson ordered an MRI of the lumbar spine. Clark Construction informed Mr. Banks that they would still pay him if he showed up for work and refrained from filing a workers' compensation claim. While Mr. Banks continued to show up for work, the work required no physical exertion and he was eventually laid off in May 2013 due to "lack of work." Mr. Banks worked for another company, Berkel, intermittently from September 2013 to December 2013; that job required no physical exertion, but he was "periodically laid off due to lack of pile driver work" and to date "has not returned to the full duties of his pre-injury employment."

Between February and December 2014, Mr. Banks saw Dr. Godwin Darko at MedStar Washington Hospital Center Support Services; at that time Mr. Banks used a cane to ambulate because of severe leg pain. In June 2014, Mr. Banks saw Dr. Michael E. Batipps, a neurologist; he complained of neck pain and informed Dr. Batipps that upon falling on the day of the 2013 work accident, he "had immediate sensation of sharp shooting pain that radiated from his neck down his back."[1] Dr. Batipps diagnosed Mr. Banks with a "lumbar disc herniation with nerve root impingement; he prescribed EMG and NCV studies, a cervical MRI, physical therapy and medication." Clark Construction ordered an independent medical evaluation by Dr. Clifford Hinkes. After mentioning Mr. Banks' treatment by Clark Construction's clinics, and Doctors Anderson, Darko, and Batipps, Dr. Hinkes disagreed with Dr. Batipps' diagnosis and thought that the

---

[1] Dr. Batipps noted on June 17, 2014, that at the time of his examination, Mr. Banks said "he also injured his neck in the fall with persistent neck pain. . . . He has neck pain radiating to the upper shoulder onset from injury on 3/[8]/13 fall incident. He did not discuss with doctors because . . . low back pain was much greater than neck pain." Dr. Batipps opined that Mr. Banks "probably [suffered from] cervical spinal cord impingement due to [his 2013 fall at work], also, possible cervical disc herniation with cervical cord compression." Consequently, Dr. Batipps concluded that Mr. Banks "needs MRI of the cervical spine and EMG of the upper extremities . . . to rule out cervical spinal cord compression and possible progression myelopathy." Mr. Banks testified at the hearing that his "neck area . . . pains [him] all the time," and that he did not have difficulties with his neck before March 7, 2013.

cervical MRI was unnecessary.[2]   In November 2014, neurosurgeon Dr. Jason Garber, who prepared a Utilization Review report, reviewed record documents, and concluded that the study recommended by Dr. Batipps "would be helpful to evaluate [Mr. Banks'] current complaints of neck pain," but he did "NOT believe this study is care reasonably required to address the sequelae of the compensable event."

In her Compensation Order ("CO"), the ALJ found that Mr. Banks' lower back complaints were causally related to his work injury.[3]   The ALJ also found that Mr. Banks' neck complaints were not related to his work injury.[4]   Further, the ALJ concluded that he was not entitled to temporary total disability benefits because he was laid off for economic reasons and had found other work that he could perform.

---

[2]   In his report, Dr. Hinkes concluded:  "I respectfully disagree with the recommendations from Dr. Batipps.  A cervical spine MRI is not necessary.  This is not related to the work injury."

[3]   While the ALJ accepted the opinion of Dr. Hinkes for purposes of rebutting the presumption of compensability afforded to Mr. Banks in proving that his back injury was causally related, she ultimately rejected the doctor's opinion as it was too conclusory to establish a lack of causal connection when taken together with the evidence presented by Mr. Banks.

[4]   The ALJ accepted the opinion of Dr. Hinkes relating to Mr. Banks' neck complaints and found that a lack of evidence or complaints of neck pain prior to June 2014 was sufficient to reject a causal connection.

Both parties appealed the order to the CRB. The CRB issued a Decision and Remand Order ("DRO"), affirming that Mr. Banks' lumbar condition was causally related to his work injury, but vacating the CO on the issues of Mr. Banks' neck complaints and the denial of temporary total disability benefits. After reviewing and referencing this court's case law regarding the presumption of compensability, the CRB concluded that "the mere statement of a physician's opinion in opposition to the presumption is not sufficient to overcome the presumption," and that "Dr. Hinkes's opinion . . . is so spare a discussion as to fairly be characterized as being 'unaccompanied by a discussion of the reasoning upon which it is based.'" Furthermore, the CRB declared: Dr. Hinkes' "opinion . . . is ambiguous. It is not clear whether Dr. Hinkes feels the cervical MRI is not necessary medically, or that it is not related to the accident."[5] On December 31, 2015, the ALJ issued a Compensation Order on Remand ("COR"), finding that Mr. Banks' injuries to the neck and lower back were both causally related to the work injury; after reviewing the record evidence, the ALJ awarded Mr. Banks temporary total disability benefits

---

[5] With respect to Mr. Banks' claim for temporary total disability benefits, the CRB declared, in part, that "[t]here is no finding that [Mr. Banks] had returned to suitable alternative employment when he worked for [a] short time, intermittently, at Berkel[,]" and that "except for the 'intermittent' periods of light duty at Berkel, [Mr. Banks] has been and remains temporarily totally disabled from the date of the layoff from [Clark Construction] to the present and continuing." The CRB remanded the matter for findings of fact relating to the claim for temporary total disability benefits.

from February 4, 2014, "through the present and continuing." On June 28, 2016, the CRB affirmed the COR in its Decision and Order. Clark Construction filed a timely appeal to this court.

**ANALYSIS**

The review of the CRB's final order is limited to the determination of whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks omitted). While our review looks at the final order of the CRB, "we cannot ignore the compensation order [of the ALJ] which is the subject of the Board's review." *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007). "We will affirm the CRB's decision if (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Reyes*, *supra*, 48 A.3d at 164 (internal quotation marks omitted). Substantial evidence consists of "relevant evidence such as a reasonable mind might accept as adequate to support a conclusion." *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012) (internal quotation marks omitted). "Our

review . . . is limited, and [w]here there is substantial evidence to support the [CRB's] findings . . . then the mere existence of substantial evidence contrary to that finding does not allow this court to substitute its judgment for that of the [CRB]." *Potomac Elec. Power Co. v. District of Columbia Dep't of Emp't Servs.*, 77 A.3d 351, 354 (D.C. 2013) (internal quotation marks omitted).

### *Causal Relation to Work-Related Event*

#### *A. Presumption of Compensability for Neck Complaints*

Clark Construction first argues that Dr. Hinkes' evaluation was sufficient to rebut the presumption of compensability, and that the CRB erred in finding that it failed to rebut the presumption of compensability for Mr. Banks' neck injury based on the evaluation of Dr. Hinkes. Under the District of Columbia Workers' Compensation Act, where the claimant presents some evidence of a work-related event that has the potential to contribute to his disability, "the statutory presumption operates to establish a causal connection between the disability and the work-related event, activity, or requirement, such that the disability is compensable." *Washington Post v. District of Columbia Dep't of Emp't Servs.*, 852 A.2d 909, 911 (D.C. 2004) (internal quotation marks omitted). "This presumption serves to effectuate the humanitarian purpose of the statute [and]

reflects a strong policy favoring awards in arguable cases." *Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 744 A.2d 992, 996 (D.C. 2000) (internal quotation marks omitted). To rebut this presumption, an employer "must show by substantial evidence that the disability did not arise out of and in the course of employment." *Young v. District of Columbia Dep't of Emp't Servs.*, 865 A.2d 535, 540 (D.C. 2005) (internal quotation marks omitted). Substantial evidence need not be unequivocal and can include the evaluation of a medical expert. *See Safeway Stores, Inc. v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 1214, 1220 (D.C. 2002) (noting that a doctor's "extensive diagnosis, which provided a detailed explanation supporting his conclusions" was sufficient to rebut the presumption of compensability). "To rebut the presumption, the employer's evidence must be 'specific and comprehensive enough to sever the potential connection between the disability and the work-related event.'" *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 1276, 1281 (D.C. 2010) (quoting *Washington Metro. Area Transit Auth. v. District of Columbia Emp't Servs.*, 827 A.2d 35, 42 (D.C. 2003)).

Here, while Clark Construction presented a medical evaluation by Dr. Hinkes in which he mentions Mr. Banks' treatment by other medical professionals, the CRB found Dr. Hinkes' report to be "spare" and conclusory without any

discussion of the reasoning for the conclusion. Furthermore, as we indicated earlier in this opinion, the CRB noted that Dr. Hinkes' discussion of the cervical MRI was ambiguous as "[i]t is not clear whether Dr. Hinkes feels the cervical MRI is not necessary medically, or that it is not related to the accident."[6] We see no basis on which to disturb the CRB's conclusion. Although unequivocal evidence is not required to rebut the presumption of compensability, we agree that the CRB could reasonably conclude that the evidence was not "specific and comprehensive enough that a reasonable mind might accept it as adequate." *Washington Post*, *supra*, 852 A.2d at 911 (internal quotation marks, citation, and brackets omitted); *see also Washington Metro. Area Transit Auth.*, *supra*, 992 A.2d at 1281 ("[T]he employer's evidence must be specific and comprehensive enough to sever the potential connection between the disability and work-related event.") (internal quotation marks omitted).[7]

---

[6] Significantly, Dr. Hinkes' recommendation against a cervical MRI spanned two sentences: "A cervical spine MRI is not necessary. This is not related to the work injury." Dr. Hinkes' report contained no further explanation on how he arrived at this conclusion.

[7] The existence of a causal relation between Mr. Banks' neck injury and the work accident is supported by substantial evidence. As the CRB indicated, the ALJ credited Mr. Banks' testimony. Mr. Banks stated that when he fell, he had a chainsaw in his hands, his head snapped back and he hit an area of his back below his neck and between his shoulder blades, and an area of his back right above his belt line. He had pain in his neck and lower back when he was treated at the employer's clinic right after his accident. He explained that he did not mention or

(continued…)

***B. Lower Back Complaints***

Clark Construction also argues that while the CRB determined that Mr. Banks' lumbar condition was causally related, it failed to undertake any reasoning to support this conclusion.  The extent of the CRB's analysis is limited to its order:

> Because the rejection of Dr. Hinkes's opinions and the [utilization review] report's conclusions are supported by substantial evidence, the conclusion that Claimant's lumbar condition is medically causally related to the work injury and the award of causally related medical care to the lumbar spine as provided and recommended by Dr. Batipps is AFFIRMED.

---

(…continued)

seek help for his neck pain because his lower back pain was the most severe, and he was trying to get back to work.  Moreover, Dr. Batipps' medical report noted that Mr. Banks "already has had chronic neck pain since a fall and injury at work . . . with chronic cervical strain," and Dr. Batipps opined that Mr. Banks "probably [suffered from] cervical spinal cord impingement."  Our dissenting colleague in part suggests remanding the case for the CRB to consider whether Mr. Banks' medical records and Dr. Hinkes' evaluation together are sufficient to rebut the presumption of compensability regarding Mr. Banks' neck complaints.  The dissent states that "[t]he ALJ specifically relied upon those medical records as part of the basis for its conclusion that Clark Construction had rebutted the presumption of compensability."  However, the record reveals that in its initial compensation order, the ALJ considered Mr. Banks' medical records only in the context of Dr. Hinkes' evaluation in determining whether Clark Construction rebutted the presumption of compensability.  Moreover, (1) given the CRB's analysis of Dr. Hinkes' evaluation in its Decision and Remand Order, (2) our limited review, and (3) the presumption's purpose to effectuate the humanitarian purpose of the Workers' Compensation Act, we see no reason to remand the case for the medical records to be addressed separately and together with Dr. Hinkes' evaluation.

Despite the lack of extensive reasoning, the CRB's conclusion is based on substantial evidence. The ALJ pointed to the breadth of evidence supporting the causal connection between Mr. Banks' lower back complaints and the work accident. Moreover, Dr. Hinkes' opinion was appropriately categorized as "conclusory and [did] not take into account [Mr. Banks'] credible description of the significant pain emanating from his lumbar injury." The ALJ was also correct in rejecting the Utilization Review report for the purpose of opining on medical causation rather than the reasonableness of the treatment suggested. *See* D.C. Code § 32-1501 (2012 Repl.) (defining "Utilization review"). Ultimately, the CRB's conclusion is not arbitrary, capricious, or an abuse of discretion.

***Temporary Total Disability Benefits***

Finally, Clark Construction argues that the CRB erred in concluding that Mr. Banks was entitled to temporary total disability benefits. Clark Construction claims that Mr. Banks was able to work for another employer after the March 7 accident, and any inability to work could have been related to his other medical conditions.

To qualify for temporary total disability benefits, the claimant bears the burden of showing that his disability is temporary and total. "A claimant suffers from *total* disability if his injuries prevent him from engaging in the only type of gainful employment for which he is qualified." *Logan v. District of Columbia Dep't of Emp't Servs.*, 805 A.2d 237, 241 (D.C. 2002) (internal quotation marks and brackets omitted). "Total disability does not mean absolute helplessness," but instead the claimant must show that "he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist." *Id.* (internal quotation marks omitted). If the claimant can meet this burden, "a *prima facie* case of total disability is established, which the employer may then seek to rebut by establishing the availability of other jobs which the claimant could perform." *Id.* at 242 (internal quotation marks omitted).

The CRB's decision that Mr. Banks remains temporarily totally disabled stems from substantial evidence. It appropriately affirmed the ALJ's finding that Mr. Banks cannot return to his pre-injury job, which is based on the evidence from Mr. Banks' testimony, his medical records, and the evaluation of Dr. Batipps. Moreover, Mr. Banks' role at Clark Construction after the accident and his intermittent employment at Berkel do not suggest otherwise, as his duties required

no physical exertion.[8] There is no indication that Clark Construction offered Mr. Banks suitable employment after he was laid off, or that his employment at Berkel was suitable alternative employment. Moreover, Mr. Banks' layoff from Clark Construction does not necessarily "sever[] the causal link between injury and wage loss." *Upchurch v. District of Columbia Dep't of Emp't Servs.*, 783 A.2d 623, 627 (D.C. 2001). Thus, we see no basis for disturbing the CRB's conclusion that Mr. Banks is entitled to temporary total disability benefits.

For the foregoing reasons, we affirm the Decision and Order of the CRB.

*So ordered.*

MCLEESE, *Associate Judge*, concurring in the judgment in part and dissenting in part: I agree with the court's affirmance of the CRB's conclusions that Mr. Banks's back symptoms were causally related to a workplace injury, *ante* at 11-12; and that Mr. Banks was entitled to temporary total disability benefits,

---

[8] While Clark Construction claims that Mr. Banks had "documented work ability of standing continuously, walking continuously, climbing/balancing continuously, kneeling/crouching/crawling continuously, and reaching with hands and arms continuously," Mr. Banks explained at the formal hearing that he could not actually perform those tasks, and his work with Clark Construction and with Berkel after his injury was quite limited. The ALJ found Mr. Banks' testimony to be "credible in all aspects."

*ante* at 12-14. I do not agree, however, with the court's affirmance of the CRB's conclusion that Clark Construction failed to rebut the presumption of compensability as to Mr. Banks's neck symptoms. *Ante* at 8-10. I therefore respectfully concur in the judgment in part and dissent in part.

In this case, an ALJ found that Mr. Banks had failed to demonstrate that Mr. Banks's neck symptoms were causally related to a work injury. The CRB reversed, concluding that the evidence relied upon by Clark Construction was not sufficient to rebut the presumption of compensability. Clark Construction argues that the CRB erred by failing to take into account medical records indicating that Mr. Banks did not describe any neck complaints to various physicians. The court affirms the ruling of the CRB without addressing this argument. In my view, the court should remand for the CRB to consider those medical records when deciding whether the evidence relied upon by Clark Construction, taken as a whole, sufficed to rebut the presumption of compensability.

In affirming the CRB, the court focuses on the CRB's determination that the medical evaluation by Dr. Hinkes -- the physician upon whom Clark Construction relied -- was "spare," conclusory, and ambiguous. Clark Construction, however, did not rely solely upon Dr. Hinkes's medical evaluation to attempt to rebut the

presumption of compensability. Rather, Clark Construction also relied upon medical records indicating that Mr. Banks did not complain about neck symptoms to a medical provider until approximately a year after the workplace injury. The ALJ specifically relied upon those medical records as part of the basis for its conclusion that Clark Construction had rebutted the presumption of compensability. The CRB did not address the significance of those medical records in reversing the conclusion of the ALJ.

I express no view on whether the medical records relied upon by Clark Construction, taken together with Dr. Hinkes's evaluation, are "specific and comprehensive enough to sever the potential connection between" Mr. Banks's neck injury and his work injury. *Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 744 A.2d 992, 998 (D.C. 2000) (internal quotation marks omitted). In my view, that question is substantial enough that the CRB should address it in the first instance. *Cf. Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) ("remand[ing] to the agency for further consideration of the evidence"); *Munson v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 623, 627 (D.C. 1998) ("A remand . . . for such clarification conforms with our practice of remanding open legal issues for reasoned

interpretation by the agency charged with administering the statute.") (internal quotation marks omitted).