*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-0190

JEANNE CODER, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

MEDSTAR WASHINGTON HOSPITAL CENTER, *et al*., INTERVENORS.

On Petition for Review of an
Order of the Compensation Review Board
of the District of Columbia Department of Employment Services
(CRB-6-21)

(Submitted October 29, 2021                    Decided November 3, 2022)

*David J. Kapson* filed a brief for Petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the statement was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General at the time the statement was filed, and *Ashwin P. Phatak*, Deputy Solicitor General, filed a statement in lieu of brief for Respondent.

*Sheryl A. Tirocchi* filed a brief for Intervenors.

Before BLACKBURNE-RIGSBY, *Chief Judge*, RUIZ and THOMPSON,[*] *Senior Judges*.

RUIZ, *Senior Judge*: Petitioner Jeanne Coder injured her lower back during the course of her employment as a clinical nurse at MedStar Washington Hospital Center. She brought a claim for workers' compensation benefits under the District of Columbia Workers' Compensation Act. *See* D.C. Code § 32-1501 *et seq.* The Administrative Law Judge ("ALJ") denied her claim, and the Compensation Review Board ("CRB") affirmed that denial, each concluding that Petitioner failed to prove, by a preponderance of the evidence, that her symptoms were "medically causally related" to her lower back injury. Ms. Coder now appeals the decision of the CRB. We affirm.

## I. Facts

On April 10, 2018, Jeanne Coder, a shock-trauma nurse at MedStar Washington Hospital Center, suffered an injury to her back while performing a lateral transfer. She felt pain and a popping sensation in her back that radiated to her right leg. Because of the pain, Ms. Coder was subsequently treated by Dr. Malady Santhosh Kodgi, a pain management specialist. Dr. Kodgi found that Ms.

---

[*] Judge Thompson was an Associate Judge of the court at the time of submission. She began her service as a Senior Judge on February 18, 2022.

Coder had painful, limited range of motion in her lumbar spine which radiated into her lower extremity. Dr. Kodgi diagnosed Ms. Coder with low back pain with radiculopathy, which was attributed to degenerative disk disease, and possible nerve root irritation caused by a Tarlov's cyst. Dr. Kodgi prescribed injections, medications, and physical therapy, which gave Ms. Coder enough relief to return to work on June 25, 2018. Due to a brief flare-up in pain, Ms. Coder was out of work from July 27, 2018, to August 5, 2018. Dr. Kodgi examined Ms. Coder again on October 18, 2018, and again diagnosed her with lumbar radiculopathy.

On March 4, 2019, Ms. Coder went back to Dr. Kodgi with complaints of pain. Dr. Kodgi prescribed injections, but her symptoms worsened after the second round of injections. On April 29, 2019, Dr. Kodgi referred Ms. Coder to a neurologist, Dr. Robert Laureno. On June 13, 2019, Dr. Laureno examined Ms. Coder and noted that she had hip pain on external rotation, even though Ms. Coder complained of lower back pain radiating down her right leg. Dr. Laureno prescribed a right hip MRI, which revealed effusion and minimal joint narrowing. On July 17, 2019, Ms. Coder visited Dr. Ahmareen Baten because she was still having lower back pain that was radiating down her right leg. On October 18, 2019, Dr. Baten diagnosed Ms. Coder as suffering from S1 radiculopathy and hip joint inflammation. Dr. Baten referred Ms. Coder for twelve consultations with a physical medicine and

rehabilitation provider, and for physical therapy for her right leg pain. On April 28, 2020, Dr. Baten referred Ms. Coder back to Dr. Kodgi for pain management, and to make an appointment with physical medicine and rehabilitation, and physical therapy.

On November 6, 2019, Ms. Coder was examined by Dr. Evan Henry Argintar for the purpose of a consultation. Dr. Argintar's report included Ms. Coder's history of the low back injury at work. Dr. Argintar found that Ms. Coder's hip examination was normal, but she had paralumbar tenderness. Dr. Argintar diagnosed Ms. Coder with "lumbar spine osteoarthritis [and] mild clinical trochanteric bursitis." Dr. Argintar referred Ms. Coder back to Dr. Kodgi for treatment of her lower back and prescribed physical therapy.

None of these physicians opined as to any relationship between Ms. Coder's April 2018 work-related injury and her symptoms.

On August 8, 2019, Ms. Coder was examined by Dr. Donald Hope, on behalf of the employer for the purposes of an independent medical evaluation ("IME"). Dr. Hope found that Ms. Coder had minimal limitation in her lumbar range of motion,

with pain at the extremes. She had "tenderness over the lumbosacral junction bilaterally, worse on the right," and she had some "pain with provocative movement of the hips with external rotation on the right." After a detailed review of Ms. Coder's medical records, Dr. Hope opined that Ms. Coder had suffered from a lumbar strain as a result of the workplace injury on April 10, 2018, but that there was no structural evidence of nerve root compression on any of her imaging studies or examinations. He concluded that the lumbar strain had been completely resolved. Dr. Hope stated that Ms. Coder's subjective claims of lower extremity pain, numbness, tingling, or weakness could not be attributable to the work-related injury.

Ms. Coder filed a claim for workers' compensation benefits and sought authorization for a physical medicine physician consultation, physical therapy for her back, and injections as recommended by Dr. Kodgi and Dr. Baten. A formal evidentiary hearing was held on September 21, 2020, before ALJ Donna J. Henderson. Ms. Coder testified on her behalf and the ALJ found her testimony to be credible based upon her demeanor and behavior during direct and cross-examination. However, the ALJ concluded that Ms. Coder failed to prove, by a preponderance of the evidence, that her current low back and right leg symptoms were medically causally related to the low back injury she sustained at work on April 10, 2018. Ms. Coder appealed that decision on November 24, 2020 to the CRB.

On appeal, the CRB vacated and remanded the Compensation Order for the ALJ to reconsider the medical evidence as well as Ms. Coder's testimony to determine whether the record evidence as a whole would support a reasonable inference of medical causation pursuant to *Straughn v. District of Columbia Department of Employment Services*, 176 A.3d 125 (D.C. 2017) and *Haire v. Fort Meyer Construction Corp.*, CRB No. 15-161 (R), 2017 WL 4003176 (Aug. 18, 2017). On remand, the ALJ again found that Ms. Coder failed to prove, by a preponderance of the evidence, that the symptoms she had were medically causally related to her work-related injury. The ALJ noted that, while Ms. Coder presented credible testimony of her symptoms, none of her treating physicians identified the work-related injury as the cause. The ALJ also relied on Dr. Baten's suspicion that the cyst and inflammation in her hip could be the cause of some of Ms. Coder's symptoms. Thus, the ALJ denied Ms. Coder's workers' compensation request for medical treatment.

Ms. Coder once again appealed the decision of the ALJ on January 25, 2021. The CRB affirmed, concluding that the ALJ followed the remand instructions to reconsider the medical evidence as well as Ms. Coder's testimony to determine if a reasonable inference of medical causation could be found. The CRB found "from a

review of the medical evidence that the evidentiary record does not contain *any other evidence* to consider and which would bolster [Ms. Coder's] testimony."

## II.    Analysis

"The Workers' Compensation Act affords claimants a presumption that an injury is causally connected to their work, and therefore compensable, whenever they present 'some evidence' of 'a work-related event, activity, or requirement which has the potential of resulting in or contributing to the death or disability.'" *Ramos v. D.C. Dep't of Emp. Servs.*, 227 A.3d 1108, 1110 (D.C. 2020) (first quoting *Ferreira v. D.C. Dep't of Emp. Servs.*, 531 A.2d 651, 655 (D.C. 1987); and then citing D.C. Code § 32-1521(1)).  "Once triggered," the employer may rebut "this presumed causal connection only by presenting 'substantial evidence' 'specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event.'" *Ramos*, 227 A.3d at 1110 (quoting *Ferreira*, 531 A.2d at 655).  If the employer does so, the "burden then reverts to the claimant to prove by a preponderance of the evidence, without the aid of the presumption, that a work-related injury caused or contributed to [the] disability."  *Washington Post v. D.C. Dep't of Emp. Servs.*, 852 A.2d 909, 911 (D.C. 2004).

We review a decision of the CRB to determine "whether the decision [was] 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Reyes v. D.C. Dep't of Emp. Servs.*, 48 A.3d 159, 164 (D.C. 2012) (quoting *Asylum Co. v. D.C. Dep't of Emp Servs.*, 10 A.3d 619, 624 (D.C. 2010)). "Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, we cannot ignore the compensation order which is the subject of the CRB's review." *Placido v. D.C. Dep't of Emp. Servs.*, 92 A.3d 323, 326 (D.C. 2014) (quoting *Reyes*, 48 A.3d at 164). "Our principal function in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues." *Catlett v. D.C. Dep't of Emp. Servs.*, 257 A.3d 543, 548 (D.C. 2021) (quoting *Straughn*, 176 A.3d at 127).

"We will affirm the CRB's decision if '(1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact.'" *Reyes*, 48 A.3d at 164 (quoting *D.C. Dep't of Mental Health v. D.C. Dep't of Emp. Servs.*, 15 A.3d 692, 696 (D.C. 2011)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Catlett*, 257 A.3d at 548 (quoting *Reyes*, 48 A.3d at 164). "If the factual findings are not supported by substantial evidence, we will not defer to

them[.]" *Id.* (alteration in original) (quoting *Reyes*, 48 A.3d at 164).

Ms. Coder argues that the CRB erred because it imposed a requirement that she prove her case with medical evidence that her disability is causally related to the work injury. We disagree. In this case, Ms. Coder credibly testified about the workplace injury and her subsequent symptoms, which, as the ALJ found, raised the presumption that her injury was compensable. The ALJ also found, however, that the employer rebutted the presumption with the medical evaluation done by Dr. Hope.[1] The next step was for the ALJ to consider whether Ms. Coder had sustained her claim by a preponderance of the evidence, without the benefit of the presumption. In its remand order, the CRB instructed the ALJ to do so by

---

[1] Ms. Coder argues that the ALJ's determination that the presumption was rebutted is not supported by substantial evidence because Dr. Hope's opinion, on which the ALJ relied to rebut the presumption, is logically inconsistent with her testimony, which the ALJ found to be credible. This argument was not addressed in the ALJ's or CRB's opinions and it does not appear to have been made in the appeal of the ALJ's Compensation Order that resulted in the remand. We do not read Dr. Hope's report as contradicting the ALJ's assessment of Ms. Coder's credibility. Ms. Coder testified about the pain she felt. Dr. Hope did not say she was malingering and his report notes some pain while examining her although not as much as her subjective claims. Dr. Hope opined as to whether her reported symptoms were attributable to the work injury and concluded they were not, based on his examination and the finding of a lumbar MRI done four days after the work injury which was "completely normal with regard to any disc injury or evidence of nerve root compression." Thus, he concluded, "any current diagnoses or claims of residual pains or disability are unrelated to the subject incident. She has no current medical conditions attributable to the subject incident. In fact, she has no objective findings attributable to the subject incident."

considering not only the medical evidence but also Ms. Coder's testimony to determine if it would permit a reasonable inference of medical causation. Specifically, the CRB noted that "[a]n award for disability benefits may be entered in the absence of supporting medical evidence if an ALJ finds a claimant is credible *and there is other evidence in the record that would permit the reasonable inference of disability*." *Haire*, 2017 WL 4003176, at *8 (emphasis added).

We agree with the CRB that the ALJ followed the remand instructions. The ALJ acknowledged that Ms. Coder testified credibly about her symptoms but noted that none of Ms. Coder's three treating physicians identified the work-related injury as the cause of her low back pain and right leg radiculopathy. The ALJ was persuaded by the opinion of Dr. Hope, the IME, that the lumbar strain caused by the work injury had resolved and her current symptoms were unrelated to that injury, relying on an MRI done shortly after the work injury. The ALJ did not dismiss Ms. Coder's complaints of pain but pointed out that Ms. Coder had "several medical conditions which may be the source of her low back and right leg pain" and noted

that Dr. Baten had suspicion that some of Ms. Coder's symptoms were caused by a cyst and inflammation in the hip.[2]

We emphasize that as the CRB has stated, an award may be made without supporting medical evidence in certain "limited circumstances." *Haire*, 2017 WL 4003176, at \*4. That medical evidence may not always be required does not mean, however, that where there is medical evidence that points away from a finding of causation, as here, it may be ignored.[3] Moreover, while "other evidence" to support a claimant's testimony need not be medical in nature, it must be sufficient — when considered together with the claimant's credible testimony and the evidence as a whole — to support a reasonable inference of causation. This is not such a case.

---

[2] The ALJ's order mentions that "[t]he hip condition results in symptoms in similar, if not the same, areas." It notes that Ms. Coder "also alleges that she injured her hip, but no benefits are sought for that condition."

[3] As the CRB quoted in *Haire*,

> [t]he increasing tendency, then, to accept awards unsupported by medical testimony should not be allowed to obscure the basic necessity of establishing medical causation by expert testimony in all but the simple and routine cases — and even in these cases such evidence is highly desirable and is part of any well-prepared presentation.

2017 WL 4003176, at \*4 n.1 (quoting 7 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 128.05(9) (Matthew Bender ed., rev. ed. 2007)).

Ms. Coder has not pointed to any other evidence in the record that would permit the reasonable inference of medical causation.  The objective evidence in this case, the lumbar CT scan and MRI, revealed mild degenerative changes with minimal loss of disk height, without stenosis, at L5-S1 — which was consistent with Dr. Hope's opinion.  While the ALJ found Ms. Coder's testimony to be credible, her testimony describing her symptoms alone is not sufficient, without some other evidence, to prove by a preponderance of the evidence that those symptoms are medically causally related to her work injury.  Dr. Hope's opinion, which the ALJ found persuasive, was grounded in the MRI and uncontradicted by Ms. Coder's treating physicians, and supports the determination that the work injury was not the cause of Ms. Coder's pain.

The decision of the CRB is

*Affirmed.*